IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEJESUS COLLINS, #366-774, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-19-2525 |
| WARDEN ALLEN GANG and CHIKA IBEJI, | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff DeJesus Collins, an inmate presently incarcerated at North Branch Correctional Institution in Cumberland, Maryland, filed the above-captioned 42 U.S.C. § 1983 civil rights action against Jessup Correctional Institution ("JCI") Warden Allen Gang and correctional officer Chika Ibeji. ECF No. 1. In the unverified Complaint, Collins alleges that while he was incarcerated at JCI, he was on his way to a medical appointment when he was stopped and physically assaulted by Officer Ibeji. *Id.* at 2–3. Collins seeks two million dollars in damages. *Id.* at 4.

On June 11, 2020, Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 20. The Court informed Collins, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in dismissal of the Complaint. ECF No. 21. On October 6, 2020, Collins filed correspondence that the Court construed as a motion to appoint counsel, but he did not respond to Defendants' motion. ECF No. 22. In an Order entered on November 25, 2020, the Court denied Collins's motion without prejudice and granted him an additional thirty days in which to respond. ECF No. 23. Collins has filed nothing further.

1

This Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' motion, construed as one for summary judgment, shall be granted.

## Background

Collins claims that at approximately 4 p.m. on February 27, 2019, he was on his way to the medical unit for an appointment when Officer Ibeji approached him and grabbed his wheelchair. Complaint, ECF No. 1 at 2. Collins stood up from his wheelchair and told Officer Ibeji to stop assaulting him, but Officer Ibeji head-bumped him. *Id.* According to Collins, additional officers arrived and placed him in handcuffs, and Officer Ibeji continued to strike him twice in the face, until the other officers told him to stop. *Id.* at 2-3.

In response, Defendants filed a motion supported by exhibits indicating that at approximately 4:05 p.m. on February 27, 2019, Officer Ibeji was observing dinner movement at JCI when he saw Collins "in his wheelchair in the lobby obstructing the flow of dinner movement." Use of Force Incident Report, ECF No. 20-2 at 2; Affidavit of Officer Ibeji, ECF No. 20-3. Officer Ibeji approached Collins and directed him to report back to his tier for his own safety, but Collins refused to leave, stated, "fuck you, I aint going anywhere," and demanded to speak to the building sergeant. ECF No. 20-2 at 2. Officer Ibeji informed Collins that he could speak to the sergeant when dinner movement was complete. *Id.* Collins then jumped up from his wheelchair and threw a closed-fist punch, striking Officer Ibeji in the face. *Id.* Officer Ibeji tried to push Collins away and began to defend himself as Collins threw another closed-fist punch. *Id.* A code was called, and correctional officers responded to assist Officer Ibeji. *Id.* As a result of the incident, Collins suffered superficial lacerations to his lip and face, and Officer Ibeji sprained his right middle finger. *Id.*

## Standard of Review

Defendants have moved to dismiss the claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d), which provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2000), *aff'd*, 684 F.3d 462 (4th Cir. 2012). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* A "[r]easonable opportunity" for the nonmoving party means that the nonmoving party must be aware that the court may treat the motion as one for summary judgment and the nonmoving party must "be afforded a reasonable opportunity for discovery" if necessary to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal quotation marks and citation omitted). To do so, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition" without formal discovery, or otherwise put the district court on notice of the reasons why summary judgment is premature. Fed. R. Civ. P. 56(d). *See also Harrods, Ltd. v. Sixty Internet Domain*

3

*Names*, 302 F.3d 214, 244–45 (4th Cir. 2002).

This Court shall treat Defendants' motion as one for summary judgment. Collins knew from the motion itself that Defendants are pursuing summary judgment. Moreover, Collins has not sought additional discovery under Rule 56(d), nor has he explained why he cannot present facts essential to justify his opposition without formal discovery. Construing the motion as seeking summary judgment is therefore appropriate.

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party bears the burden of showing the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Moreover, a dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–50.

The Court reads Collins's pleadings generously, as he proceeds *pro se*. *See Erickson v.*

4

*Pardus*, 551 U.S. 89, 94 (2007). That said, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks and citation omitted).

## Discussion

In their motion, Defendants argue, *inter alia*, that (1) Officer Ibeji is entitled to summary judgment because there was no evidence that he used excessive force; (2) Collins fails to allege any personal involvement on the part of Warden Gang; and (3) Defendants are protected by qualified immunity. ECF No. 20-1.

### I.   Officer Ibeji

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The subjective element requires evidence that prison personnel used force "maliciously or sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)) (internal quotation marks omitted). In evaluating this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful

response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

To satisfy the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted).

Viewing the facts in the light most favorable to Collins, it appears that during dinner movement at JCI on February 27, 2019, Officer Ibeji directed Collins to report back to his tier. However, Collins refused to leave, stood up from his wheelchair, and twice struck Officer Ibeji in the face with a closed-fist punch. Officer Ibeji tried to push Collins away and defended himself until additional correctional officers came to assist him. As a result of the incident, Collins suffered minor lacerations to his face.

On this record, it does not appear that Officer Ibeji used force maliciously or sadistically. First, any force used by Officer Ibeji in directing Collins to return to his tier was applied in a good faith effort to restore discipline during dinner movement. Second, any force used by Officer Ibeji after Collins stood from his wheelchair and struck Officer Ibeji was applied to quell a reasonably perceived threat that Collins would strike him again. Thus, Officer Ibeji acted appropriately, and Collins has failed to demonstrate otherwise. Because Collins does not meet his burden of identifying evidence to show that a genuine dispute of material facts exists regarding his claim of cruel and unusual punishment, Officer Ibeji is entitled to summary judgment.

## II. Warden Gang

Other than naming Warden Gang in the caption of the Complaint, Collins does not identify

6

any specific action or inaction on his part that resulted in a constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation). To the extent Collins intended to sue Warden Gang in his capacity as Officer Ibeji's supervisor, he cannot succeed.

It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

Collins has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Warden Gang's subordinates. As discussed above, Collins failed to show that his Eighth Amendment rights were violated. Accordingly, he has

7

necessarily failed to demonstrate that Warden Gang authorized or was indifferent to any such violation. Collins's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). Therefore, Warden Gang is entitled to summary judgment.[1]

## Conclusion

Defendants' motion, construed as one for summary judgment, is granted. A separate order follows.[2]

Dated this 7 day of January, 2021.

FOR THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge

---

[1] In light of this ruling, the Court need not address Defendants' arguments regarding qualified immunity.

[2] On January 4, 2021, the Court received correspondence from Collins alleging additional incidents unrelated to his claims in this case. ECF No. 24. If Collins wishes to file a new complaint concerning these recent events, he will be provided with 42 U.S.C. § 1983 forms.